UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FLORENCE BIKUNDI,<br><br>          Defendant. | Criminal Case No. 14-030 (BAH)<br>Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion filed by the defendant, Florence Bikundi, to revoke the pre-trial detention order of a Magistrate Judge and to release the defendant into the High Intensity Supervision Program pending trial. Def.'s Mem. Supp. Def.'s Mot. Reconsid. Detention Def. Florence Bikundi ("Def.'s Mem.") at 1, ECF No. 18-1. For the reasons set forth below, this motion is denied.

### I.    BACKGROUND

Defendant Florence Bikundi was indicted on February 19, 2014, for one count of health care fraud, in violation of 18 U.S.C. § 1347; one count of Medicaid fraud, in violation of 42 U.S.C. § 1320a-7b(a)(3); four counts of laundering monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and three counts of engaging in monetary transaction with monies derived from the specified unlawful activities of health care and Medicaid fraud, in violation of 18 U.S.C. § 1957. Indictment ¶¶ 56–65, ECF No. 1.

According to the allegations in the Indictment, the defendant engaged in a massive fraud spanning almost seven years, from January 2008 until her arrest in 2014, to conceal her

1

exclusion from participation in federal health care programs by using fraudulent forms and thereby obtain unauthorized Medicaid payments totaling over $75,000,000. *See generally* Indictment.

Following her arrest on February 21, 2014, the defendant was ordered temporarily detained, at the government's request, by Magistrate Judge Alan Kay. Minute Entry, Feb. 21, 2014. The government subsequently filed a Motion for Pretrial Detention of the defendant, pursuant to 18 U.S.C. §§ 3142(d)(1)(B), (e)(1), and (f)(2)(A) "because defendant Bikundi poses a serious flight risk and there is no release condition or combination of conditions that will reasonably assure her appearance in court as required." Gov't Mot. for Pretrial Detention at 1, ECF No. 8. The defendant did not oppose this motion and was, consequently, ordered by the Magistrate Judge to be held without bond pending trial. Minute Entry, Feb. 25, 2014.

The defendant thereafter, on May 28, 2014, filed a Motion for Reconsideration of the Magistrate Judge's detention order, pursuant to 18 U.S.C. § 3142, Def.'s Mot. Reconsid. Detention Def. Florence Bikundi ("Def.'s Mot.") at 1, ECF No. 18, and consented to scheduling a detention hearing on June 13, 2014,[1] *see* Minute Entry, May 29, 2014. The government has filed a memorandum in opposition. Gov't Mem. Opp'n Mot. Def.'s Mot. ("Gov't Opp'n"), ECF No. 20. The Court held a hearing on the motion on June 16, 2014, at the conclusion of which the Court issued an oral ruling denying the defendant's motion. *See* Minute Entry, June 16, 2014. This Memorandum Opinion sets forth in further detail the basis for the Court's ruling. *See* 18 U.S.C. § 3142(i)(1) (requiring that detention order "include written findings of fact and a written statement of the reasons for the detention"); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (noting that Bail Reform Act requires pretrial detention order be

---

[1] At the defendants' request, the June 13, 2014 hearing was continued until June 16, 2014 to allow counsel an opportunity to review certain documents provided by the government.

2

supported by "a clear and legally sufficient basis for the court's determination" in written findings of fact and a written statement of the reasons for the detention or in "the transcription of a detention hearing") (quoting *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)) (per curiam).

## II. LEGAL STANDARD

A motion under 18 U.S.C. § 3145(b) for review of a Magistrate Judge's detention order requires that the Court review *de novo* whether conditions of release exist that "will reasonably assure the defendant's appearance in court or the safety of any other person or the community." *United States v. Hassanshahi*, No. 13-274, 2013 WL 5916783, at *2 (D.D.C. Nov. 5, 2013) (citing 18 U.S.C. § 3142(e)(1)). "'The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'" *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011)); *see also United States v. Hitselberger*, 909 F. Supp. 2d 4, 7 (D.D.C. 2012).

The Bail Reform Act requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person[.]" 18 U.S.C. § 3142(e)(1). In determining whether any conditions of release will reasonably assure the appearance of the person as required, the court must "take into account the available information concerning" four factors set out in 18 U.S.C. § 3142(g). These factors are:

> "(1) the nature and circumstances of the offense charged, . . . ;
>  (2) the weight of the evidence against the person;
>  (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning

>   appearance at court proceedings; and . . . ;
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

The government is required to demonstrate the appropriateness of pretrial detention because the defendant poses a risk of flight "by a preponderance of the evidence." *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987); *United States v. Vortis*, 785 F.2d 327, 329 (D.C. Cir. 1986). "That preponderance must, of course, go to the ultimate issue: that no combination of conditions—either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful--can "reasonably" assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (citing 18 U.S.C. § 3142(c)).

### III. DISCUSSION

The Court sets out below an evaluation of each of the four factors, under 18 U.S.C. § 3142(g), that must be considered in determining whether pretrial detention is warranted here.

#### A. Nature and Circumstances of the Charged Offenses

With respect to the nature and circumstances of the offense, the Indictment alleges that the defendant engaged in a massive fraud in which she and organizations she operated obtained over $75,000,000 in funds from the Medicaid program. *See generally* Indictment. These are serious felony offenses and, if convicted, the defendant faces a substantial period of incarceration. For example, if the defendant is convicted of the charged offenses, she would face up to twenty years' incarceration on the money laundering counts, under 18 U.S.C. § 1956(a)(1)(B)(i). Conviction of the charged offenses would also result in a substantial advisory sentencing Guideline range under the U.S. Sentencing Commission Guidelines Manual ("U.S.S.G."). Specifically, assuming, *arguendo*, that the defendant has a Criminal History

Category I,[2] her total offense level, absent any departures or mitigating circumstances, may reach thirty-five, *see* U.S.S.G. §§ 2S1.1(a)(1); 2B1.1(a)(1), (b)(1)(M), (b)(7)(iii) (using a base offense level seven, plus twenty-four levels for the amount of the loss plus four levels for the amount of loss to the government for health care fraud), resulting in an advisory guideline range of 168 to 210 months' incarceration on the money laundering counts, s*ee* U.S.S.G. Sentencing Table, Zone D, which carry the highest statutory maximum penalty. This considerable punishment gives the defendant "a substantial incentive to flee the United States." *United States v. Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (finding detention appropriate for defendant facing stiff penalties for bribery and visa fraud); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) (denying release pending trial and noting lengthy sentence that would accompany conviction was factor that increased flight risk of defendant); *see also United States v. Dupree*, 833 F. Supp. 2d 241, 253–54 (E.D.N.Y. 2011) (finding, in context of due process challenge to pretrial detention, bank fraud involving "millions of dollars" to be "serious charges" such that pretrial release not warranted).

Moreover, according to the description of the fraud scheme in the Indictment, the defendant allegedly had the sophistication to set up several companies, navigate the application process for those companies to obtain authorization for payments as a Medicaid provider and then to funnel monies among multiple bank accounts to conceal the unlawful activity. *See* Indictment ¶¶ 10–19. The government has a valid basis for concern that "[t]he charges against the defendant, together with access to potentially significant amounts of financial resources, provide a strong incentive to flee the United States." Gov't Opp'n at 2 (citing *United States v. Anderson*, 384 F. Supp. 2d 32, 35 (D.D.C. 2005) (finding that no condition or combination of

---

[2] The defendant has prior convictions which may result in a higher Criminal History Category, but this review of the potential determination of the defendant's advisory guideline sentencing range is merely an estimate for purposes of evaluating the seriousness of the offense.

5

conditions would have reasonably assured the appearance of the defendant where the offenses demonstrate "substantial familiarity with the commercial and financial laws of other countries, sophistication in arranging international financial transactions and in moving money across borders, and a facility for concealing the existence and location of significant quantities of money and other assets").[3]

At the hearing on June 16, 2014, the government indicated that a superseding indictment containing additional fraud charges against the defendant is forthcoming. *See* Rough Hrg. Tr., June 16, 2014, ("Tr.") at 29:3-7.[4] This may only compound the seriousness of the offenses faced by the defendant. The defendant contends that, despite the huge amount of fraud loss charged in the Indictment of "in excess of $75 million," Indictment ¶ 59(e), the charges hinge almost entirely on a single disputed fact: whether the defendant knew and had received notice that her nursing license had been revoked in Virginia and that she had been excluded by the Department of Health and Human Services from participation in Medicare, Medicaid and all Federal Health care programs. *See id.* at 36:17–37:9. The government is correct, however, that this critical disputed fact "doesn't negate the seriousness of the offense." *Id.* at 36:25–37:1. Consequently, the Court finds that the first factor favors pretrial detention, as the alleged fraud is quite complex and the potential monetary loss to the government is substantial.

### B. Weight of the Evidence Against the Defendant

With respect to the weight of the evidence against the defendant, a grand jury has returned an indictment establishing that probable cause exists to find that the defendant

---

[3] The government alleges that the defendant "use[d] . . . aliases in her efforts to defraud D.C. Medicaid," Gov't Mot. Pretrial Detention at 5, ECF No. 8, but this allegation appears to be slight hyperbole. As alleged in the Indictment, the defendant appears to have used only variations on her maiden and married name. For example, the defendant used the name "Florence N. Igwacho" in 1996 and 2002, and the name "Florence I. Ngwe" in 2003, to apply for and obtain licensed practical nurse licenses from the District of Columbia, Indictment ¶¶ 25–27, and the name "Florence Bikundi" when applying for a Medicaid provider number to obtain Medicaid payments, *id*. ¶¶ 36–41.

[4] The parties have not requested formal transcripts from the court reporter. Accordingly, the Court relies on the court reporter's rough transcript of the June 16, 2014 hearing in this Memorandum Opinion.

committed the charged offenses. *See generally* Indictment. The defendant challenges the weight of the evidence, contending that, contrary to the government's allegations, the millions of dollars in Medicaid reimbursements allegedly received by the defendant's company Global Healthcare were not fraudulent but "legitimate business expenses," Def.'s Mem. at 5, and fully reported on income tax returns, without any effort to conceal them, Tr. at 5:8-23. Thus, the defendant argues that the millions of dollars paid by Medicaid to this company do not "in and of themselves constitute a crime." Def.'s Mem. at 5. This is a good point, but even if the fraud loss amount does not amount to over $75,000,000, as alleged in the Indictment, this is only one aspect of evaluating both the seriousness of the offense and the weight of the evidence. The government has built its case on documentary evidence and, as detailed in the Indictment, has documented the defendant's multiple revoked nursing licenses in multiple jurisdictions, including the revocation in Virginia, which was the basis for her exclusion from participation in all Federal Health Care programs and her ineligibility to operate her companies as a Medicaid provider. *See* Indictment ¶¶ 21-35. This documentary support for the government's allegations appears very weighty.

Indeed, the parties have regularly updated the Court on the processing of the volume of documents at issue in this case in order for the government to comply with its discovery obligations. The defendant highlights one significant concern over the amount of material seized by the government, namely, "300 boxes of documents that were seized from three locations" as well as digital material from seized computers. Def.'s Mem. at 4-5. Specifically, defense counsel pointed out at a May 29, 2014 status hearing that the defendant's ability to assist in review of the material is adversely affected by her incarceration pending trial. The Court has similar concerns about how long discovery will take in this case, particularly while the defendant

7

remains incarcerated pending trial. The remedy for that concern, however, is not pretrial release when the statutory conditions are not met, but unrelenting efforts by the government to process discovery and get ready for trial as promptly as possible.

### C. History and Characteristics of the Defendant

With respect to the "history and characteristics of the [defendant]," the defendant points out that she has lived in this country for over sixteen years, is raising her three children here, and has a number of relatives, including her parents, residing in this country. *See* Def.'s Mem. at 5-7; Tr. at 16:11-19. These ties to the United States generally, and to this area specifically, are substantial and would normally militate strongly in favor of release of the defendant.

In this case, however, the defendant's strong familial and community ties to the United States are significantly undercut by three salient facts. First, the "defendant is not a citizen of the United States and does not have legal status in the United States." Gov't Opp'n at 3. Indeed, as the defendant concedes, Immigration Customs and Enforcement ("ICE") has lodged an immigration detainer against her. Def.'s Mem. at 6. Even were she to be released pending trial in this case, she would consequently face detention on the immigration detainer unless she successfully obtains bail before an Immigration Judge. *See id.*

Second, the government proffers that it has seized from the defendant, or the companies she controlled, only approximately $10.5 million, a fraction of the funds defrauded from the Medicaid program, with the remaining amounts "unaccounted for[.]" Gov't Opp'n at 2. More troubling is that the government has seized documents connecting the defendant "to at least one bank account in Cameroon." *Id.* Specifically, evidence seized from the defendant indicates that she maintains a Cameroonian bank account (Acct. no. XXXXX001-16), which, on February 4, 2012, had a balance of 91,252,000 in West African Francs, which amounts to approximately

8

$190,304 in U.S. dollars. *Id.* at 3; *id.* at 3 n.2. The defendant challenges this proffer, contending that the Cameroonian bank account attributed to the defendant belongs to the defendant's husband, who is also from Cameroon, and that the defendant is merely a beneficiary of the account. *See* Tr. at 44:1–6. The government has countered, explaining that among the documents seized from the defendant were her "last will and testament where she talks about the account and property." *Id.* at 43:21-22.

Overseas ties such as those proffered by the government, combined with a defendant's lack of legal status in this country militate strongly in favor of detention on grounds that the defendant presents a flight risk. *See Vo*, 978 F. Supp. 2d. at 45-46 (D.D.C. 2013) (finding defendant's experience living overseas and extensive assets overseas favored pretrial detention); *United States v. Sheikh*, No. 13-cr-305, 2014 WL 116535, at *4 (E.D.N.C. Jan. 10, 2014) (finding defendant's extended family overseas and prior travel overseas weighed against pretrial release); *United States v. Fata*, No. 13-30484, 2013 U.S. Dist. LEXIS 149168, at *8–9 (E.D. Mich. Oct. 11, 2013) (finding pretrial release unwarranted where defendant accused of healthcare fraud had significant family ties to Lebanon and defendant's parents lived in a home in Lebanon purchased by defendant). The Court finds that the defendant has continuing significant foreign ties to her country of origin, including potential access to funds located in Cameroon, and that this raises a significant concern about her serious risk of flight.

Finally, as the defendant acknowledges, she has at least two prior convictions, including a conviction for identity fraud. Def.'s Mem. at 5, *see* Gov't Opp'n at 4 (noting that "[p]ublic records indicate that defendant Bikundi has multiple prior convictions in the State of Maryland"). While both convictions occurred over a decade ago, *id.*, the nature of the identity fraud conviction is particularly troubling. As the government describes the circumstances of this

offense, the defendant used false identification to obtain employment as a registered nurse. *See* Tr. at 26:16–20. The government has bolstered concern about the defendant's trustworthiness by citing various examples of the defendant's "misrepresentations, omissions, and false statements in dealing with others[.]" Gov't Opp'n at 4. Specifically, the government describes misrepresentations in various documents (1) as to her citizenship status on a bank account information form, *id.*; (2) about her status as a convicted felon and whether she had ever filed for bankruptcy, *id.* at 4-5; (3) about her prior marriages, *id.* at 5-6; and (4) about whether she had previously owned real property in connection with a loan application, *id.* at 6.[5] The alleged misrepresentations cited by the government and her prior criminal experience in using a false identification contribute heavily to the government's demonstration by a preponderance of the evidence that the defendant poses a serious flight risk.

### D.     The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release

Finally, with respect to the nature and seriousness of the danger that the defendant's release would pose to any person or the community, this is not the basis for the government's continued request for pretrial detention of the defendant. Thus, this factor has minimal relevance in this case. *See Vo*, 978 F. Supp. 2d at 41 (finding that where detention request is based on risk of flight "[t]his factor. . . has little bearing"). In any event, there is no allegation that the defendant engaged in any violence or that she poses any risk of physical danger to another person or the community. *See generally* Indictment. To the contrary, the defendant has substantial support from her family and members of the community and her church, as shown by

---

[5] At the June 16, 2014 detention hearing, the government also alleged that the defendant misrepresented aspects of her personal history during her interview for preparation of the Pretrial Services Report. The Court's review of the same statements found the government's characterization without basis and therefore accorded "no weight" to this part of the government's argument. Tr. at 40:21–41:14.

the multiple affidavits and letters of support submitted on her behalf. *See generally* Def.'s Suppl. Def.'s Mot. Ex. 1, ECF No. 22-1.

*   *   *

Upon consideration of the evidence and arguments presented in connection with the pending motion, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds that the government has established by a preponderance of the evidence that the defendant's pretrial release would pose a serious risk that she would flee. The defendant's prior conviction involving identify theft, compounded by her alleged sophistication with financial transactions, the scope of her alleged fraudulent activity in connection with the charged offenses, the substantial period of incarceration that she faces if convicted, her lack of legal status in the United States, and her alleged overseas ties and assets, when considered together, favor of pretrial detention under 18 U.S.C. § 3142(f)(2)(A).

## IV. CONCLUSION

For the foregoing reasons, the defendant shall remain in the custody of the Attorney General for confinement in a corrections facility pending trial and the defendant's motion for reconsideration of the Magistrate Judge's Order of Detention is DENIED.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED**.

**DATED:** June 18, 2014

_____
BERYL A. HOWELL
United States District Judge