UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

```
-----------------------------------------------X
UNITED STATES                    :
                                 :
    v.                           :      Case:  1:14-cr-00030-BAH
                                 :
FLORENCE BIKUNDI                 :
                                 :
-----------------------------------------------X
```

## MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY ORDER OF FORFEITURE

Defendant Florence Bikundi, through undersigned counsel, hereby submits this Memorandum in Support of her Motion for a Preliminary Order Of Forfeiture. As noted in her Motion for Judgment of Acquittal, which is incorporated herein by reference, Mrs. Bikundi believes there is insufficient evidence to support her conviction and, therefore, objects to the imposition of any order of forfeiture. Furthermore, based on the same arguments, the Government has failed to prove a nexus between the funds at issue and any criminal conduct. However, should this Court deem forfeiture appropriate, and without waiving objections to any such order, Mrs. Bikundi believes such forfeiture should be limited to $561,558.00. Any further forfeiture is unwarranted by the facts of this case, is not supported by sufficient evidence of a nexus to criminal conduct, represents a violation of Mrs. Bikundi's constitutional rights against excessive fines, and represents a gross disparity in this case which would demonstrate the imposition of a trial penalty.

### I. Background

On November 12, 2015, a jury returned a verdict of guilty against Mrs. Bikundi for her ownership and operation of Global Healthcare, Inc. ("Global") on Count One of the Indictment

charging Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349; Count Two and Count Thirteen charging Health Care Fraud in violation of 18 U.S.C. § 1347; Count Fourteen charging Federal Health Benefit Program Fraud in violation of 42 U.S.C. § 1320a-7b(a)(3); Count Fifteen charging Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h); and Counts Sixteen through Twenty-Two charging Laundering of Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  On December 7, 2015, Mrs. Bikundi filed a Renewed Motion for Acquittal (Dkt. 393) and Motion For a New Trial (Dkt. 394), which motions are incorporated herein by reference.  These motions are still pending before this Court,

The Government has served notice of its intent to seek forfeiture of funds worth at least $75,000,000.  *See* Indictment, Forfeiture Allegation. With this Court's permission, the parties have agreed to submit evidence and arguments regarding forfeiture, pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure, through the submission of motions for preliminary orders of forfeiture.  Dkt. 401.

## II.     Legal Standard and Argument

a)  *Nexus to an Offense*

Upon the entering of a verdict in a matter in which the Government has provided proper notice of its intent to seek forfeiture, the Court must make an evidentiary finding that the property sought to be forfeited bears a nexus to the offense or offenses upon which the defendant has been convicted.  Fed. R. Crim. P. 32.2(b)(1).  In this case, while evidence was presented of some limited fraudulent billing by providers working for Global, the bulk of billing by Mrs. Bikundi's company were for lawful services provided by licensed professionals that, but for miscommunications regarding licensing, would have been untainted by any wrongdoing.

In her Renewed Motion for Judgment of Acquittal (Dkt. 393) Mrs. Bikundi demonstrates the paucity of evidence that exists on the record connecting her or her property to criminal conduct. For the same reasons, the government has not established a nexus between the property they seek to seize and any relevant offenses.

b) *Constitutional Limitations on Forfeiture*

Because forfeiture is a form of punishment, the Constitution limits the amount the Government may seize. *See Austin v. United States*, 509 U.S. 602 (1993).[1] The Supreme Court has made clear that any forfeiture amount which is disproportionate to the gravity of a defendant's offense is unconstitutional. *United States v. Bajakajian,* 524 U.S. 321, 337 (1998). In *Bajakajian,* the defendant was caught carrying over $300,000 in cash out of the country without making the proper customs disclosures. When the Government sought forfeiture of all of the cash, the Supreme Court found such an application of the forfeiture statutes to be excessive in violation of the Eighth Amendment to the Constitution. *See, Id.* The D.C. Circuit, citing to *Bajakajian,* has recognized that the blind application of federal forfeiture statutes can pose serious Eighth Amendment concerns. *See United States v. Cano-Flores*, 796 F.3d 83, 94 (August 7, 2015).

There has been little analysis of the specific factors suggested by *Bajakajian* in this Circuit. However then Circuit Judge Sotomayor applied *Bajakajian* to a criminal case in the Second Circuit in 2009, and laid out some of the factors to consider:

> "[a]mong the factors the [*Bajakajian*] Court considered [in determining whether the forfeiture was excessive] were [1] "the essence of the crime" of the [defendant] and its relation to other

---

[1] Indeed the legislative history accompanying current forfeiture statutes reflects the punitive intent behind forfeiture, where the accompanying report to the enactment of the current form of 18 U.S.C. § 981(a)(1) states in the purpose and summary section: "forfeiture undeniably provides both a deterrent against crime and a measure of punishment for the criminal." Civil Asset Forfeiture Reform Act, House Report 106-192 at p.5.

3

> criminal activity, [2] whether the [defendant] fit into the class of persons for whom the statute was principally designed, [3] the maximum sentence and fine that could have been imposed, and [4] the nature of the harm caused by the [defendant's] conduct."

*United States v. Varrone*, 554 F.3d 327, 331 (citing *United States v. Collado,* 348 F.3d 323, 328 (2d Cir. 2003) (per curiam)(further citations omitted)). In *Varrone*, The Court found that the record had not been made sufficient for the Court of Appeals to decide the constitutional question completely, and remanded for further development of the "*Bajakajian* factors." *See, Varrone* 554 F. 3d at 332-333. However, Judge Sotomayor did note that the one factor they had information about, the relationship between the forfeiture amount and the maximum sentence proscribed for the crime, weighed against the constitutionality of the forfeiture amount. *Id* at 332. In that case, the defendant was convicted of failing to file currency transaction reports (CTRs) for checks cashed at his business which totaled over $10,000 each. The total value of the checks not reported was submitted to be over $200,000,000. *Id*, at 330. The defendant's maximum fine under the statutes and guidelines was $250,000 but the forfeiture amount imposed was over $12,000,000. *Ibid.* Judge Sotomayor wrote that a forfeiture amount 40 times greater than the fine range weighs against constitutionality. *Id.* at 332.

In this matter, the maximum fine authorized by statute for any particular count of conviction is $500,000 or twice the loss amount. Therefore, in seeking forfeiture of over $75,000,000, the Government is seeking to increase the maximum fine amount by 150 times.[2] While arguments surrounding sentencing have not yet been made or called for, certainly the Government has failed to prove actual loss amounts anywhere near the forfeiture amounts sought. This is because the amount of billing activity that was proved at trial to be for anything

---

[2] Even assuming that the Department of Probation's calculation of a total maximum guidelines range of $3,500,000 if sentenced consecutively is correct, which Mrs. Bikundi does not concede, the government's proposed forfeiture is more than 20 times that figure as well.

but legitimate services delivered to qualified beneficiaries, was a small percentage of the total amount billed to the District of Columbia, the source of the Government's grossly exaggerated forfeiture amount.

Beyond this factor, however, the other *Bajakajian* factors also weigh against the constitutionality of a $75,000,000 forfeiture.  First, as demonstrated in Mrs. Bikundi's prior motions incorporated herein, the Government has failed to provide sufficient evidence that Mrs. Bikundi was intimately involved in or even aware of, the gross but only occasional fraudulent activities of some of her providers.  Instead, the problems directly related to Mrs. Bikundi's actions appear to be little more than regulatory disclosure issues, not unlike the violations in *Bajakajian or Varrone*.  Even with the occasional fraud of some of her providers, there is no evidence to dispute that the vast majority of Mrs. Bikundi's business activities were, beyond the company's licensing miscommunications, lawful services provided to needing patients.  Therefore, the "essence of the crime" specifically linked to Mrs. Bikundi is little more than a licensing issue and is not closely related to the occasional but more egregious fraudulent activities of her providers.  This factor then also weighs against the constitutionality of a large forfeiture amount.

The second factor is whether the defendant fits into the class of persons whom the statute was targeted at.  Mrs. Bikundi, a formerly licensed registered nurse, was trying to conduct a legitimate business though, apparently, was in over her head with some of the administrative and regulatory requirements of this industry.  While the evidence shows that some of Global's providers took advantage of her and committed the kind of core health care fraud that the statute is aimed at, Mrs. Bikundi herself was involved more in the kind of regulatory disclosure problems that the defendant was accused of in *Bajakajian.*  Therefore an honest review of the

evidence indicates that Mrs. Bikundi is not in the class of fraudsters that the statutes applied to her were truly aimed at. This factor also weighs against constitutionality.

The last *Bajakajian* factor is the nature of the harm caused by the defendant. This factor again points the Court to consider the good and otherwise lawful services provided faithfully by Mrs. Bikundi for so many of her patients and clients. The actual loss suffered by either the taxpayers or any patient due to the occasional independent frauds committed by some of Global's providers is, according to the record, a small percentage of Global's revenues, and certainly not proportional to a forfeiture figure that seeks all of the amounts billed by Global for 5 years of mostly properly delivered services.

Because all of these factors weigh against the constitutionality of ordering the forfeiture of all funds related to Global, the Constitution must trump the statutes and some other formulation must be followed.

c) *Disparate Sentence Indicates Trial Penalty*

It is clearly unconstitutional to penalize a defendant for exercising her right to go to trial. *See, e.g., Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Where sentences between co-conspirators are more disparate than can be explained simply by acceptance of responsibility, then the concerns for trial penalties may be implicated. In this matter, several alleged co-conspirators, providers who personally engaged in fraudulent conduct, have plead guilty with promises of dramatically smaller forfeiture amounts. Whereas forfeiture is a form of punishment, this level of disparity implicates constitutional prohibitions on punishing a defendant for exercising her right to trial.

### III. Proposed Preliminary Forfeiture Amount

Mrs. Bikundi objects to the forfeiture of any funds for the reasons stated in the previously filed and herein incorporated motions described above. In the event the Court finds it necessary to impose some form of forfeiture, the amount should, at a minimum, reflect the concerns raised above. Therefore, without waiving objections to forfeiture in general, Mrs. Bikundi has filed a Proposed Order of Forfeiture limiting the amount to be forfeited to $561,558.00

The sum proposed is based on the amounts paid to Mrs. Bikundi by Global during the relevant time period, as demonstrated on the attached affidavit of Jeffrey Barsky, C.P.A., attached hereto as Exhibit A.[3] As per Exhibit A, This amount reflects the sum total of the net pay, 1099 income, and cash distributions from the evidence presented at trial and as detailed in the affidavit. Seeking a reasonably related amount to what Mrs. Bikundi actually received is necessary to mitigate the unconstitutional and draconian effects that would result from following the harsh statutes at issue in this case, which do not account for the costs and results of the mostly legitimate business that was performed by Global during the time in question.

---

[3] While the version of the affidavit attached is not yet notarized due to time and travel difficulties, Mrs. Bikundi will file a notarized version of this affidavit as soon as possible (the business day after this filing has been declared a state of emergency in the District of Columbia and thus finding a notary and filing may be delayed). Counsel has attempted to obtain the Government's consent, but this problem occurred at the end of the business day.

**IV.     Conclusion**

For the foregoing reasons, Mrs. Bikundi objects to the imposition of any forfeiture order, but, without waiving such objections or rights to appeal, moves this Court to adopt the attached order should the Court find a need to order any forfeiture at all pending appeal of any outstanding charges in this matter.

Dated:  January 21, 2016                                        Respectfully submitted,

/s/ William R. Martin
William R. Martin (# 465531)
Sasha Hodge-Wren (# 976342)
Miles & Stockbridge, P.C.
Washington, DC 20005
(202) 737-9600
billy.martin@martingitnerlaw.com

*Counsel for Florence Bikundi*