UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>FLORENCE BIKUNDI,<br><br>Defendant. | Criminal Action No. 14-cr-00030 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION & ORDER

The defendant, Florence Bikundi, has moved for an amendment to the Judgment and Commitment ("J&C") Order, ECF No. 544, issued by this Court following the defendant's conviction for conspiring to defraud and defrauding the District of Columbia Medicaid program. Def.'s Mot. Amend. Judgment and Commitment Order ("Def.'s Mot.") at 1, ECF No. 576. The defendant contends she is unable to pay the restitution amount of $150 per month which has been set by the Bureau of Prisons ("BOP") according to the Inmate Financial Responsibility Program ("IFRP"), and has been placed on administrative sanctions for failure to make her payments. *Id*. For the reasons stated below, the defendant's motion is granted in part and denied in part.

I.  **BACKGROUND**

The facts underlying the defendant's conviction, following a jury trial, are fully described in this Court's prior opinion denying her post-trial motions for a judgment of acquittal or a new trial, and will not be repeated here. *See United States v. Bikundi*, Criminal Action No. 14-030 (BAH), 2016 WL 912169 (D.D.C. Mar. 7, 2016). Only those facts necessary for resolving the instant motion are summarized below.

On November 12, 2015, a trial jury returned verdicts of guilty against the defendant on twelve counts, including Health Care Fraud, in violation of 18 U.S.C. § 1347, Conspiracy to Commit Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(h), Laundering

1

of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and Aiding and Abetting; Causing an Act to be Done, in violation of 18 U.S.C. § 2. *See* Judgment & Commitment Order ("J&C"), at 2–4, ECF No. 544.

On June 1, 2016, the defendant was sentenced to concurrent terms of 120 months on 11 counts and 60 months on one count, followed by concurrent terms of 36 months supervised release, a special assessment of $1,200, and restitution in the amount of $80,620,929.20, to be paid in monthly installments of $200 per month. *See id*. at 3; Transcript of Sentencing, at 175:11–20, ECF No. 563.[1]

The defendant is currently detained at a BOP facility in Hazelton, West Virginia. *See* Def.'s Mot. at 2, ¶ 8. According to the defendant, BOP has set a payment schedule of $150 per month through the IFRP, Def.'s Mot. at 1, which the government does not dispute.[2] The

---

[1] The oral and written pronouncements of the defendant's sentence differ in a significant respect for purposes of this motion. At sentencing, this Court orally ordered the defendant to pay $200 per month and did not specify whether this payment schedule applied while the defendant was incarcerated or only upon her release. *See* Transcript of Sentencing, at 175:11–20, ECF No. 563. The written Judgment and Commitment order, on the other hand, specifies that the defendant shall pay $200 per month "[u]pon her release." J&C, at 9. "Because '[t]he pronouncement of the sentence constitutes the judgment of the court,'" *United States v. Love*, 593 F.3d 1, 9 (D.C. Cir. 2010) (quoting *Kennedy v. Reid*, 249 F.2d 492, 495 (D.C. Cir. 1957)), "'the written judgment form is a nullity to the extent it conflicts with the previously pronounced sentence,'" *id.* (quoting *United States v. Booker,* 436 F.3d 238, 245 (D.C. Cir. 2006)); *see also United States v. Marquez,* 337 F.3d 1203, 1207 n. 1 (10th Cir. 2003) (holding that "an oral pronouncement of sentence from the bench controls over . . . written language"). Thus, the oral pronouncement controls.

[2] The government initially claimed that the U.S. Attorney's office contacted the BOP facility in which the defendant is incarcerated and learned that on October 12, 2016, the defendant "voluntarily initiated IFRP payments at a rate of $115 a month." Gov't Opp'n Def.'s Mot. ("Gov't Opp'n") at 10 n.2, ECF No. 581. Further, the government claimed that "[a]t the time of her agreement, [the defendant's] inmate account had a balance of $2153.23." *Id.* "Before her first IFRP payment was made," the government stated, the defendant "withdrew $2149.38 from her account" and, accordingly, the defendant's IFRP status "was changed to 'refused.'" *Id.* In her reply brief, the defendant disputed the government's position that the defendant "voluntarily initiated IFRP payments at a rate of $115 a month" and that she, at one time, had a balance of $2153.23. Def.'s Reply Supp. Def's Mot., at 1, ECF No. 582. According to the defendant, she "was initially required to participate in the IFRP program with a $70 payment that was subsequently raised to $150 per month." *Id.* To clarify this discrepancy, this Court directed the government to provide "documentation from the Bureau of Prisons that is the basis for the assertion that the defendant Florence Bikundi, in October 2016, 'had a balance of $2153.23' in her inmate account." Minute Order (Dec. 27, 2016). In its response, the government explained that the "amount referenced by the United States was a figure initially reported to Counsel for the United States as the amount of 'national deposits,'" which "includes the amount of deposits over the previous six months." Gov't Resp. Court Orders of December 27 & 28, 2016 ("Gov't Supp. Resp."), at 2, ECF No. 588. The government conceded that the "characterization of this figure as the total amount in her account at a given time was thus inaccurate." *Id.* A review of the defendant's inmate

2

defendant claims she is unable to afford the current payment schedule of $150 per month and thus has been "place[d] on administrative sanctions for failure to make the payments." *Id*. The defendant further contends that "she has no means of making the restitution payment each month as BOP requires," explaining that while she "applied for a job through BOP," she has "been [un]able to secure employment" and even if she secured employment, it is her understanding that she would "only earn approximately $21 per month." *Id*. at 2 ¶¶ 9–11. The defendant states she needs any money she earns from potential employment "to pay for her normal hygiene needs through the commissary at BOP." *Id*. at 3 ¶ 12.

## II. DISCUSSION

The defendant moves for an amendment to the Judgment and Commitment Order, "reflecting that restitution should be paid once she is released from custody." *Id*. ¶ 16. In the alternative, the defendant asks for restitution "to be limited to $10 per month while she is incarcerated." *Id*. In opposing the defendant's motion, the government's argument is threefold. First, the government argues that the judgment for restitution against the defendant is "enforceable immediately" and that the "[d]efendant offers no grounds for amendment of this immediately enforceable judgment." Gov't Opp'n, at 4–5 (citing *United States v. Rush*, 853 F. Supp. 2d 159, 163 (D.D.C. 2012) ("The circumstances under which a district court may modify a sentence or judgment are very specific and limited." (internal quotation marks omitted))); *see also id*. at 6 (noting that there is no "qualifying language" in the restitution section of the J&C). Second, the government posits that the defendant is restricted to bringing her claim as a petition for writ of *habeas corpus,* under 28 U.S.C. § 2241. *Id*. at 9–10. Finally, the government

---

account records, provided by the government, reveals that the defendant's commissary account balance has ranged from $579.48 in July 2016 to as low as $0.30 in January 2017. *See id.*, Attach. C., ECF No. 588-4. At no point has her balance exceeded $580, let alone $2000. *See id.*

3

contends that because BOP is an agency of the Executive Branch, this Court lacks subject-matter jurisdiction over the IFRP's administration of the defendant's restitution payment schedule.[3] *Id.* at 8. The government's arguments are evaluated after a brief review of the statutory framework.

### A. Statutory Framework

The principal statute applicable here is the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A, 3664, which, as its name makes clear, "is unlike other restitution statutes under which the award of restitution is discretionary." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012). The MVRA provides that a restitution order "shall require" the defendant either to return the property or reimburse the victim for his or her "loss," 18 U.S.C. § 3663A(b)(1), and is enforced pursuant to section 3664, which requires courts to issue "restitution to each victim in the full amount of each victim's losses," *id.* § 3664(f)(1)(A).

Section 3664 sets out the specific procedures for calculating restitution and establishing a payment schedule. The statute specifies that the court "shall" specify in the restitution order "the manner in which, and the schedule according to which, the restitution is to be paid," *id.* § 3664(f)(2), taking into consideration "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including

---

[3] The government also argues that the instant motion should be denied because the defendant has failed to exhaust administrative remedies. Gov't Opp'n at 8–9. This argument is not persuasive for at least three reasons. First, the defendant is not required to exhaust administrative remedies because she is not challenging the administration of the IFRP. Instead, the defendant is seeking an amendment to the restitution order to provide for a specific payment schedule while the defendant is incarcerated. Such an amendment has nothing to do with the administration of the IFRP by the BOP. Second, and relatedly, although the Prison Litigation Reform Act ("PLRA") requires exhaustion, 42 U.S.C. § 1007(e)(a), the PLRA covers inmate suits related to prison conditions, *see Porter v. Nussle*, 534 U.S. 516 (2002), and the defendant is not challenging those conditions. Third, even if exhaustion were arguably at issue, it is not required where any resort to administrative remedies would be futile, particularly where denial would be assured by the existence of an official BOP policy. *See Ward v. Chavez*, 678 F.3d 1042, 1046 (9th Cir. 2012) (concluding that exhaustion of administrative remedies would be futile where a prisoner was challenging his restitution payments under the IFRP).

4

obligations to dependents," *id*. The court may order "a single, lump-sum payment," "partial payments at specified intervals," "in-kind payments," "a combination of payments at specified intervals and in-kind payments," or even "nominal periodic payments." *Id*. § 3664(f)(3)(A)–(B). Thus, although the MVRA restricts discretion in setting the amount of restitution, the statute expressly authorizes discretion in "fashioning" how the defendant is required to pay that amount. *See Paroline v. United States*, 134 S. Ct. 1710, 1729 (2014) ("District courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders.").

"A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that" the order can be "corrected," "amended," "modified," or "adjusted." *Id*. § 3664(o).[4] One circumstance in which the restitution order may be adjusted post-sentencing occurs when the court is notified "of a material change in the defendant's economic circumstances." *Id*. § 3664(k). Upon receipt of such financial information, "the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id*.

**B. Analysis**

The defendant does not specify the legal authority under which her motion is brought, but it is best construed as a motion pursuant to 18 U.S.C. § 3664(k), which provides for "adjust[ments]" of a restitution payment schedule on "the motion of any party . . . as the interests of justice require."

---

[4] 18 U.S.C. § 3664(o) provides that a restitution order "[1] can subsequently be (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title; (B) appealed and modified under section 3742; (C) amended under subsection (d)(5); or (D) adjusted under section 3664(k), 3572, or 3613A; or [2] the defendant may be resentenced under section 3565 or 3614."

The government contends that the defendant has "failed to offer specific financial information justifying the requested relief." Gov't Opp'n at 10. Relying on *United States v. Locke*, Criminal Action No. 09-259, 2012 WL 1154084 (D.D.C. Apr. 9, 2012), the government argues that the defendant has not provided "any evidence or indication that there has been a change—much less a material change—in her economic circumstances that would impact her ability to pay restitution." *Id.* (quoting *Locke,* 2012 WL 1154084, at *5).

In this case, however, the defendant has provided several facts that strongly indicate there has been a "material change in the defendant's circumstances." 18 U.S.C. § 3664(k). The defendant notes that because she has been unable to make restitution payments, "she has been sanctioned" by BOP, which includes "restrictions" on the "amount of money [the defendant] can have on her account each month." Def.'s Mot. at 3 ¶ 15. According to the defendant, "should she secure employment while on restriction, she will only be given $5.25 per month and the rest will be put towards the restitution payment." *Id.* Further, the defendant claims she has "applied for a job through BOP, but has not been able to secure employment"; that "should she secure employment, it is [her] understanding that under BOP policies and procedures [the defendant] will only earn approximately $21 per month"; that the defendant "needs the money she earns from any potential employment to pay for her normal hygiene needs through the commissary"; that during her incarceration over the last three years, she "has not been employed"; and finally, that "her bank accounts were seized and property forfeited as a result of her convictions," and thus she has "no means to pay the restitution amount that has been ordered."[5] Def.'s Mot. at 2-3 ¶¶ 10-13. The government does not dispute any of these claims.

---

[5] Thus, this case is unlike situations where a defendant may have "assets . . . in other accounts or locations." *Hinton v. United States,* Civil No. 01-1508 (RMU), 2003 WL 21854935, at *5 (D.D.C. Aug. 5, 2003).

6

Given the defendant's account of her financial situation and the sanctions imposed by BOP, contrary to the government's characterization, her motion does not "rest[] solely on a bald allegation that she is unable to pay." Gov't Opp'n at 11. Unlike the defendant in *Locke,* who "d[id] not contend that she [wa]s unable to pay her restitution[,]" *United States v. Locke,* 2012 WL 1154084, at *2, the defendant here has fully articulated reasons why there has been a "material change in the defendant's economic circumstances" such that adjustment of the defendant's payment schedule during incarceration is warranted due to the concomitant sanctions arising from her inability to make payments on her restitution, 18 U.S.C. § 3664(k).

The government argues next that the defendant's motion should be denied since the relief she seeks may only be pursued as a petition for writ of *habeas corpus,* pursuant to 28 U.S.C. § 2241. Gov't Opp'n at 9–10 (citing *United States v. Diggs*, 578 F.3d 318, 320 (5th Cir. 2009)(determining that because a defendant "voluntarily signed a contract under the IFRP, and any effort to change the terms of that contract must be made through § 2241"); *Ihmoud v. Jett,* 272 Fed. App'x. 525 (7th Cir. 2008) ("The IFRP is a means of executing an inmate's sentence, and thus complaints about the BOP's administration of the program are cognizable under 28 U.S.C. § 2241."); *Matheny v. Morrison,* 307 F.3d 709, 712 (8th Cir. 2002) (holding that prisoners' challenges against an "IFRP payment schedule" are "correctly framed as § 2241 claims brought in the district where the sentence is being carried out")). The government is incorrect for at least two reasons. First, the defendant is not challenging the administration of the IFRP, but rather is seeking an adjustment to the court-ordered restitution payment schedule. *See Diggs*, 578 F.3d at 320 (acknowledging that if the defendant were "challenging a court-ordered repayment schedule . . . suit could be brought under § 3664(k)," not § 2241). For example, the defendant is not challenging the fact that she was subjected to administrative sanctions for non-

7

compliance with the IFRP. Instead, the defendant is moving for a reduction in the amount of restitution she must pay each month, which motion is expressly contemplated by § 3664(k). Thus, a clear statutory basis is available to provide the relief she seeks, without requiring a petition under § 2241. Second, the government's position that restitution adjustment motions must be brought under § 2241 makes little sense. As § 2241 petitions typically challenge the fact or length of confinement, *see Preiser v. Rodriguez,* 411 U.S. 475 (1973), or the manner of execution of a sentence, *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 809 (D.C. Cir. 1988), the "proper respondent in a habeas corpus action [under § 2241] is the petitioner's custodian," *Day v. Trump*, No. 15-5144, 2017 WL 2697981, at *2 (D.C. Cir. June 23, 2017), which is ordinarily the warden of the facility where the prisoner is being held, *id*. Thus, in this case, the defendant would have to bring a § 2241 petition in the U.S. District Court for the Northern District of West Virginia. That court, however, has no familiarity with the defendant's case and is not the correct forum to litigate the appropriate restitution payment schedule. Rather, this Court, as the sentencing court, which originally entered the restitution order against the defendant, is properly responsible for any motion to modify that order.

Finally, the government suggests—notwithstanding the plain terms of § 3664(k) authorizing modification of a restitution payment schedule—that this Court lacks "control" over the IFRP and, further, that this Court's restitution order "neither controls the terms of BOP's IFRP, nor compels [the defendant's] participation in it" and "[a]ccordingly, the Defendant's motion is without merit and should be denied." Gov't Opp'n at 2–3. The government misunderstands the relationship between the IFRP and the court-ordered restitution payment schedule, as well as the roles of the Judiciary and the Executive within their respective spheres of responsibility.

Setting a payment schedule in a restitution order is a "core judicial function," not a prerogative of the Executive branch, and thus, by amending a restitution order, this Court does not invade any protected constitutional interest of the Executive branch. *See, e.g.*, *United States v. Prouty,* 303 F.3d 1249, 1254–55 (11th Cir. 2002) (holding that the setting of a payment schedule "for a prisoner to pay restitution or fines is a core judicial function under the MVRA, and that the district court may not delegate discretion to set the schedule" to BOP). Although BOP administers the IFRP, this does not mean that the terms of court-ordered restitution may be ignored. Rather, BOP must administer IFRP by fully accommodating the payment schedule set by the Court and may not seek from the defendant a greater amount than ordered. *See United States v. Villongco*, Criminal Action No. 07-9 (BAH), 2016 WL 3747508, at *1, 7 (D.D.C. July 11, 2016) (quashing a writ of garnishment as to certain retirement and brokerage accounts belonging to the defendant because the government was effectively accelerating the defendant's restitution payments notwithstanding a court-ordered schedule); *see also United States v. Villongco*, Criminal Action No. 07-9 (BAH), 2017 WL 2560905, at *3 (D.D.C. June 13, 2017) (denying the government's motion for reconsideration). No provision of the MVRA permits the government "to ignore the specific terms of the restitution order, including, in particular, a payment schedule imposed after consideration of the requisite statutory factors concerning the economic circumstances of the defendant." *Villongco*, 2016 WL 3747508, at *7; *see United States v. Martinez*, 812 F.3d 1200, 1207 (10th Cir. 2015) ("The government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms."); *id*. at 1202 ("By statute, it is the district court—not the government—that determines how a defendant is to pay restitution." (citing § 3664(f)(2)); *cf. United States v. Wyss,* 744 F.3d 1214, 1217 (10th Cir. 2014) (explaining that a

9

restitution order is a product of a "specific and detailed [statutory] scheme addressing the issuance . . . of restitution orders arising out of criminal prosecutions").

In support of its argument, the government relies on *United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008), which addressed whether a restitution order that did not specify a payment schedule during incarceration impermissibly delegated to BOP the court's responsibility to set a schedule under § 3664(f)(2) of the MVRA. *See* 18 U.S.C. § 3664(f)(2) (stating that "the court *shall* . . . specify in the restitution order . . . the schedule according to which[] the restitution is to be paid . . . ." (emphasis added)). *Sawyer* concluded that such orders were not impermissible delegations, while cautioning that restitution payment schedules "need not, and as a rule should not, begin until after the defendant's release from prison," but that "[p]ayments until release should be handled through the [IFRP] rather than the court's auspices." *Id.* at 796. *Sawyer*'s holding, however, has been rejected by the majority of the Courts of Appeals. The majority view is that where a defendant cannot make an immediate payment, a sentencing court impermissibly delegates its scheduling authority to the BOP by declining to set a payment schedule for the defendant during incarceration. *See, e.g.*, *Prouty,* 303 F.3d at 1254–55 (holding that a restitution payment schedule ordering "immediate" payment "with an informal understanding that the probation office shall set a repayment schedule" was an improper delegation of the district court's duty); *United States v. Corley,* 500 F.3d 210, 225–27 (3d Cir. 2007), *vacated and remanded on other grounds by* 556 U.S. 303 (2009) (explaining that because the defendant in that case could not afford immediate repayment, the district court "was required under § 3664(f)(2) to set a different schedule of payments" and held that "orders directing 'immediate' payment under such circumstances are indistinguishable in principle from outright delegations of authority to the Bureau of Prisons," which is improper); *United States v. McGlothlin,* 249 F.3d

783, 785 (8th Cir. 2001) (concluding that the district court could not delegate to BOP its statutory duty to set a payment schedule); *United States v. Kinlock,* 174 F.3d 297, 301 (2d Cir. 1999) (rejecting a restitution order that ordered "immediate[]" repayment, and holding that "[w]hen restitution cannot be paid immediately, the sentencing court must set a schedule of payments for the terms of incarceration, supervised release, or probation."); *United States v. Ward*, 678 F.3d 1042, 1050 (9th Cir. 2012) (holding that "where the defendant has insufficient financial resources to make immediate repayment, the district court—not BOP, not Probation— must set a repayment schedule in the judgment of conviction in order to discharge its responsibilities under the MVRA"); *see also United States v. Merric,* 166 F.3d 406, 409 (1st Cir. 1999); *United States v. Davis,* 306 F.3d 398, 426 (6th Cir. 2002); *United States v. Overholt,* 307 F.3d 1231, 1256 (10th Cir. 2002); *but see United States v. Miller,* 406 F.3d 323 (5th Cir. 2005) (holding a court did not commit error in ordering immediate payment where selling of the defendant's assets would cover most of the restitution obligation, followed by a monthly payment schedule after release); *United States v. Dawkins,* 202 F.3d 711, 716 (4th Cir. 2000) (upholding a district court's restitution instruction that payment be made pursuant to IFRP while incarcerated).[6]

---

[6] The government disingenuously states that *Sawyer* was cited "with approval" by the D.C. Circuit in *United States v. Baldwin*, 563 F.3d 490 (D.C. Cir. 2009). Gov't's Opp'n at 7. *Baldwin* did no such thing. *Baldwin* merely held that because of the existing circuit split, it was not "plain error" for a district court to fail to set a repayment schedule for a defendant who is incarcerated. *See Baldwin*, 563 F.3d at 492 ("Given the divergent views of the courts of appeals, we cannot say that the district court committed 'plain error' in its restitution order."). This follows the general principle that an error is ordinarily not plain if it does not contradict existing circuit or Supreme Court precedent, unless the statute at issue "speaks with absolute clarity." *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009). The limited and narrow holding of *Baldwin* was reaffirmed in *United States v. Hunter*, 786 F.3d 1006, 1012 (D.C. Cir. 2015), where the D.C. Circuit acknowledged the circuit split over the "legality of restitution orders that leave a prisoner's payments up to IFRP." *Id*. The *Hunter* court then stated "[t]his circuit has not ruled on the permissibility of such orders, *and we do not do so today*." *Id*. (emphasis added). Instead, the D.C. Circuit recognized that *Baldwin* held that "restitution arrangements like the one at issue here do not constitute plain error." *Id*. Thus, the D.C. Circuit has yet to rule on the permissibility of restitution orders that fail to set payment schedules for periods of incarceration, and this Court finds persuasive the view held by the majority of the Courts of Appeals.

A necessary corollary of the principle adopted by the majority of the Courts of Appeals—that the setting of a payment schedule is a non-delegable core judicial function—is that this Court retains the statutory authority to correct, amend, or otherwise change any restitution payment schedule, including during the term of incarceration, and BOP has no independent authority to ignore such an order.

To be sure, other Judges of this Court have determined, relying on *Sawyer* and *Baldwin*, that "[t]he amount an inmate must pay under [the Financial Responsibility Program] is a matter entrusted to the Executive Branch." *United States v. Rush,* 853 F. Supp. 2d 159, 162 (D.D.C. 2012); *see also United States v. Hunter*, Criminal Action No. 11-39-1 (RWR), 2013 WL 4083311, at *2 (D.D.C. Aug. 13, 2013); *United States v. Ayers–Zander,* Criminal Action No. 11-280 (RWR), 2013 WL 2468300, at *1 (D.D.C. June 7, 2013).[7] These cases are neither binding nor persuasive. Although the administration of the IFRP is entrusted to the Executive Branch, the amount an inmate must pay in restitution under its auspices is cabined by the terms of the court-issued restitution order. *Cf. Villongco*, 2016 WL 3747508, at *7. The weight of authority among the circuits is that "setting a schedule for a prisoner to pay restitution or fines is a core judicial function under the MVRA, and that the district court may not delegate discretion to set the schedule" to the Executive branch. *Prouty*, 303 F.3d at 1254–55. In other words, because this discretion is non-delegable, this court retains supervisory authority over the restitution

---

[7] These three cases relied on *Baldwin* for the principle that IFRP operates "under the exclusive control and authority of the Executive Branch," but for the reasons stated above, *Baldwin* does not stand for that principle. *See supra* n.6. Although *Baldwin* quoted *Sawyer*, the decision did not adopt *Sawyer*'s holding that "a court may not set the terms of restitution payments made through the [IFRP], because the Program is under the exclusive control and authority of the Executive Branch." *Baldwin*, 563 F.3d at 492. Instead, as noted, *Baldwin* merely stands for the proposition that, given the existing circuit split, a restitution order that does not provide a payment schedule is not plain error. *See Baldwin*, 563 F.3d at 492 ("While agreeing with two circuits in so holding, the Seventh Circuit acknowledged that its decision on the issue conflicted with that of six other circuits."). *Baldwin* is thus limited to this narrow holding and does not serve as useful precedent for the broader principle for which it has been cited.

payment schedule, a schedule which must be adhered to by BOP. *See United States v. Lowe*, 220 Fed. App'x 831, 833 (10th Cir. 2007) (explaining that the court-ordered payment schedule "must be adhered to by both [the defendant] and the Bureau of Prisons" (citing *Overholt,* 307 F.3d at 1255 (by its plain terms, the MVRA "clearly contemplates judicial control of restitution payment schedules")); *United States v. Coates*, 178 F.3d 681, 684 (3d Cir. 1999) (stating that the "plain language of the MVRA[] vest[s] sole authority in the district courts" for the scheduling of restitution payments); *Corley*, 500 F.3d at 225 ("[T]he plain language of section 3664(f)—stating that "the court shall" order restitution and specify the manner and schedule of payments—means that ordering restitution is a judicial function that cannot be delegated, in whole or in part.").

Indeed, the MVRA expressly anticipates the possibility that the *court*, not the Executive branch, may "correct[,]" "amend[,]" "modif[y,]" or "adjust[]" restitution, notwithstanding the fact that an order of restitution is a final judgment. 18 U.S.C. § 3664(o). The statute states that "the *court* may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id.* § 3664(k) (emphasis added). In contrast, the MVRA provides BOP with no discretionary authority over changing an inmate's restitution repayment schedule. Indeed, unlike the federal courts' authority to order restitution, which is expressly conferred by statute, the government has pointed to no statutory basis for their argument that BOP can somehow ignore the specific terms of a court-ordered restitution payment schedule. Thus, any notion that a defendant's repayment schedule during incarceration "is a matter entrusted to the Executive Branch" is belied by the plain text of the MVRA.[8]

---

[8] In supplemental briefing, the government suggests that "[i]f the Court . . . were to modify the amount of the Court ordered monthly payment, it would not control the amount that BOP would calculate as the IFRP payment, which is controlled by the inmate's trust account, particularly in a case like this one in which the full, mandatory amount of the restitution obligation remains unchanged[.]" Gov't Supp. Resp. at 3 (citing 18 U.S.C.

13

If the government's argument were followed to its logical end, BOP would have effectively unreviewable discretion to change the terms of an incarcerated defendant's court-ordered restitution payment schedule. Nothing in the MVRA confers such vast authority and control to the Executive Branch. Rather, by including § 3664(k), Congress clearly contemplated that the sentencing court would retain the authority and responsibility to amend the defendant's repayment schedule "as the interests of justice require." The government's argument—that this Court lacks the authority to set a repayment schedule while the defendant is incarcerated—reads § 3664(k) out of the statute. Indeed, even if there are "persuasive" policy reasons "for delegating the . . . payment schedule to the Bureau of Prisons," such policy reasons are foreclosed by the clear statutory text of the MVRA. *Overholt,* 307 F.3d at 1256; *Weinberger v. United States,* 268 F.3d 346, 362-64 (6th Cir. 2001) (Cohn, J., concurring); *Corley,* 500 F.3d at 223 (noting that delegation to BOP may "make[] sense practically," but it does not accord with the MVRA's statutory text); *accord Prouty,* 303 F.3d at 1256 (Hodges, J., concurring). Accordingly, to the extent this Court modifies the defendant's restitution payment schedule, BOP is obligated to work within the confines of the Court's order when administering the defendant's repayment under the auspices of the IFRP.

---

§ 3664(f)(1)(A). The government acknowledges that "some courts attempt to vary the timing of the restitution payment," but contends that "this does not change the fact of the restitution obligation and the ability to collect from an inmate as authorized under 18 U.S.C. § 3664(n), and other sources of authority." *Id*. As already noted, BOP is bound by the court-ordered restitution payment schedule and may not seek an amount greater than ordered. The government's contention that 18 U.S.C. § 3664(n) controls is puzzling. That section merely states that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). This statutory provision does not provide BOP with any independent statutory authority to vary the terms of the defendant's payment schedule. The "other sources of authority" referenced by the government are not identified and remain unclear, but to the extent the government is relying on the IFRP's implementing regulations, *see* 28 C.F.R. §§ 545.10, 545.11, the relevant statutory provision of the MVRA controls.

## III.    CONCLUSION

Accordingly, it is **ORDERED** that the defendant's motion to amend her Judgment and Commitment Order is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that the defendant's request for restitution to be limited to $10 per month during her term of incarceration is **DENIED**; and it is further

**ORDERED** that the defendant's restitution payment schedule is **AMENDED** to read as follows:

> The defendant shall pay a $1,200.00 special assessment and $80,620,929.20 restitution. These amounts are payable to the Clerk of the U.S. District Court for the District of Columbia and the Clerk shall disburse the restitution amount to the victim, D.C. Department of Health Care Finance. During the defendant's term of incarceration, restitution is payable on a schedule of the greater of $25 quarterly or twenty (20) percent of the defendant's income. The defendant may make payments through her participation in the Bureau of Prison's Inmate Financial Responsibility Program. Payment on remaining restitution and special assessment balances is to commence no later than 60 days following the defendant's release from imprisonment to a term of supervised release in monthly payments of the greater of $200 or twenty (20) percent of net income, over the duration of the term of supervised release and thereafter as prescribed by law for as long as some debt remains. The Court orders that interest shall be waived.

**SO ORDERED.**

Date:  June 28, 2017

_____
BERYL A. HOWELL
Chief Judge