UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FLORENCE BIKUNDI,<br><br>Defendant. | Criminal Action No. 14-30-1 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Florence Bikundi's motion for compassionate release. Def.'s Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Mot."), ECF No. 653. Defendant is 57 years-old and currently serving a 120-month sentence in Bruceton Mills, West Virginia. Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n") at 3, 6, ECF No. 656. She worries that her "hypertension" and "hyperlipidemia," along with her "obesity," makes her "more likely to suffer dire consequences" should she contract COVID-19. Def.'s Mot. at 1. The government opposes a reduction in defendant's sentence. Gov't Opp'n at 12. For the reasons set forth below, defendant's motion is denied.

**I.   BACKGROUND**

The evidence supporting defendant's conviction has been thoroughly detailed elsewhere. *See United States v. Bikundi*, 926 F.3d 761, 773–76 (D.C. Cir. 2019); *United States v. Bikundi*, Crim. Case No. 14-30 (BAH), 2016 WL 912169, *1–19 (D.D.C. Mar. 7, 2016). In short, despite her exclusion from participation in federal health care programs, defendant owned a medical services company that received tens of millions of dollars in Medicaid payments, much of which was for medical services that were never in fact provided. *Bikundi*, 2016 WL 912169 at *11–15. When this massive Medicaid fraud was uncovered, she was first charged in a nine-count single-

1

defendant indictment with health care fraud, Medicaid fraud, money laundering, and engaging in monetary transactions with funds derived from unlawful activity. *See generally*, Indictment, ECF No. 1. As the investigation of defendant and her company unfolded, that indictment was superseded by a 27-count multi-defendant indictment. *See generally* Superseding Indictment, ECF No. 44. Defendant was ultimately charged with 15 counts of conspiracy to commit health care fraud, health care fraud, Medicaid fraud, conspiracy to launder money, money laundering, and engaging in monetary transactions in property derived from unlawful activity. *Id.* After a three-week trial, a jury found defendant guilty on 12 counts and not guilty on the other 3. Verdict Form, ECF No. 360.[1]

At sentencing, this Court explained how, although the efforts of many individuals were necessary to pull off such a massive fraud, defendant was "the prime moving force behind" the scheme. Sentencing Hr'g Tr. at 168:22–23, ECF No. 563. The signatures she forged led to her company's approval as a Medicaid provider. *Id*. at 168:23–25. She "supervised and even instructed employees about how to falsify patient and employee records." *Id*. at 169:4–7. She "participated" in the payment of "and even instructed [her] employees about how to pay kickbacks to D.C. Medicaid beneficiaries" so that those patients would falsify their records and her company would be able to reap "the greatest amount of money possible" from Medicaid. *Id*. at 169:8–12. Nevertheless, although the sentencing guidelines suggested a sentence of 360

---

[1] Specifically, the jury found defendant guilty of one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, and that the goal of that conspiracy was to violate 18 U.S.C. §§ 1035 and 1347 and 42 U.S.C. § 1320a-7b(b), one count of health care fraud based on fraudulent billing practices, in violation of 18 U.S.C. § 1347, one count of health care fraud based on her exclusion from participating in Medicaid programs, in violation of 18 U.S.C. § 1347, one count of health care fraud based on her concealing her exclusion from participating in Medicaid, in violation of 42 U.S.C. § 1320a-7b(a)(3), one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h), and seven counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Verdict Form at 1–4; *see also generally* Superseding Indictment. Defendant was found not guilty of three counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957. Verdict Form at 5.

months to life imprisonment, *id.* at 91:9–14, defendant was granted a 13-level departure, lowering her guidelines range to 108 to 135 months' imprisonment, *id*. at 107:7–12.  Defendant was sentenced within that range to eleven terms of 120 months' imprisonment and one term of 60 months' imprisonment, all to run concurrently.  Judgment at 3, ECF No. 544.  She was likewise sentenced to 12 concurrent terms of 36 months' supervised release.  *Id*. at 4.  In addition, she was ordered to pay $80,620,929.20 in restitution, jointly and severally with her co-conspirators, *id.* at 5, and to forfeit $39,989,956.02 in assets, Forfeiture Order ¶ 7, ECF No. 544-1.

Defendant has served approximately 6 years and 7 months of her 10-year sentence, and the Federal Bureau of Prisons ("BOP") calculates that, with good time credit, she will be released on August 28, 2022.  Gov't Opp'n, Ex. E at 2, ECF No. 656-5.  She is currently incarcerated in Federal Correctional Institution Hazelton ("FCI Hazelton"), at its Secure Female Facility.  Gov't Opp'n at 6.

On June 24, 2020, defendant submitted a request for a reduction in her sentence to the warden of that facility, explaining that she suffered from "[d]ebilitating heart disease" and high blood pressure.  Gov't Opp'n, Ex. C, ECF No. 656-3.  The warden denied that request on July 31, 2020, explaining that a review of defendant's medical records "reveal[ed] that [defendant is] medically stable" and therefore did "not meet medical criteria" required to justify a reduction in sentence.  Gov't Opp'n, Ex. D, ECF No. 656-4.  Not long after the warden denied her request, defendant, through counsel, submitted the instant motion for compassionate release.  Defendant's motion explains that her "history of chronic heart problem[s]" including "hypertension and hyperlipidemia," along with her "obesity" mean she "is more likely to suffer dire consequences" should she contract COVID-19.  Def.'s Mot. at 1.  That motion is now ripe for consideration.

## II.     LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United* States, 564 U.S. 522, 526 (2011).  As originally enacted, one such exception, codified in section 3582(c)(1)(A), empowered the BOP Director to "petition the court for a reduction in . . . sentence" and gave courts the authority to grant those petitions if they found "that the reduction was justified by 'extraordinary and compelling reasons.'"  S. Rep. 98-223 at 118; *see also* Pub. L. No. 98-473, Title II, § 212(a)(2).[2]  As amended in the First Step Act of 2018, Pub. L. No. 115-391, the exception in section 3582(c)(1)(A) is expanded to authorize a defendant directly to file a motion for such compassionate release with the court after he exhausts his "administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion" on his behalf or he waits at least "30 days" after he delivers his request for compassionate release to "the warden of [his] facility."  18 U.S.C. § 3582(c)(1)(A).

In resolving motions for compassionate release, the court may reduce a term of imprisonment only "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," *id.*, and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i)[3]; and, second, "that such a

---

[2]     As originally enacted, 18 U.S.C. § 3582 read as follows:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.

Pub. L. No. 98-473, Title II, § 212(a)(2).

[3]     Though not relevant to the instant motion, the court may also reduce a prisoner's sentence if he is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)."  18 U.S.C. § 3582(c)(1)(A)(ii).

4

reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id*. § 3582(c)(1)(A).[4]

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance as to both of the statutorily required findings. It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, *id*. § 1B1.13(2); and (3) "the reduction is consistent with [the] policy statement," *id.* § 1B1.13(3). The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] . . . ability . . . to provide self-care" within the prison environment, *id*. § 1B1.13, cmt. n.1(A); (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," *id.* § 1B1.13, cmt. n.1(B); (3) "[f]amily [c]ircumstances" of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," *id*.

---

[4] The Sentencing Commission is tasked, in its organic statute, with promulgating general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18," 28 U.S.C. § 994(a)(2), and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," *id*. § 994(t).

5

§ 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id*. § 1B1.13, cmt. n.1(D).

## III. DISCUSSION

The government opposes defendant's early release on two grounds. First, it contends that defendant has failed, at least in part, to meet the compassionate release statute's exhaustion requirement. Second, the government maintains that, even if she had met that requirement, consideration of the factors laid out in 18 U.S.C. § 3553(a) counsels against a reduction in defendant's sentence. While the government's first argument is not persuasive, the Court agrees that a reduction in sentence is inappropriate in defendant's circumstances.

### A. Defendant Has Met The Compassionate Release Statute's Exhaustion Requirement

The government suggests that, because defendant's request for a reduction in sentence submitted to her warden only mentioned "heart disease and high blood pressure," she has not met the compassionate release statute's exhaustion requirement "with respect [to] her claim regarding her weight." Gov't Opp'n at 11–12. The government asserts that "insofar as defendant seeks early release based on her obesity," the request should thus be denied without prejudice. *Id*. at 12.

The request submitted by defendant to her warden appears to be a form provided by her facility. It instructs inmates to "check what type of RIS," short for Reduction in Sentence, they "are filing." Gov't Opp'n, Ex. C at 1. Defendant selected "Debilitated Medical Condition," and, when the form prompted her to "[b]riefly describe" her medical condition, she wrote "Debilitating heart disease" and "Chronic [high] blood pressure." *Id*. When provided space to include "additional information [she] wish[ed] to be considered," defendant gave further detail

6

about her high blood pressure and complained that she had not been tested for COVID-19. *Id*. at 2. Defendant does not mention her weight in the limited space she was provided. Nevertheless, by checking the box next to "Debilitated Medical Condition" on the form, defendant may well have been suggesting that her overall condition justified her release. Indeed, her request seems to have triggered a more fulsome review of her medical condition, as the warden denied her request only after a "review of [her] chart" and "consultation with [her] medical provider reveal[ed] that [she was] medically stable." Gov't Opp'n, Ex. D. The letter thus suggests that the warden's consideration of defendant's request was not limited to her claim of heart disease and high blood pressure, but rather involved a more comprehensive review to determine whether she was in a debilitated medical condition.

Despite the government's lengthy argument to the contrary, as this Court has elsewhere explained, the compassionate release statute's "exhaustion" requirement is neither jurisdictional nor a mandatory claims processing rule and may be waived when exhaustion "would be futile." *United States v. Morris*, Crim. Action No. 12-154 (BAH), 2020 WL 2735651, *3–6 (D.D.C. May 24, 2020) (internal quotation marks omitted). Even if the government were correct that an inmate's motion for compassionate release made to a court must be limited to precisely those claims the inmate made to the warden of her facility, a dubious proposition for which the government offers no direct support, a denial on that basis here would be futile. The warden has already made her position clear: she does not believe defendant is in a debilitated medical condition. The government's bid to have defendant's motion thrown out on exhaustion grounds is thus rejected.

    **B.**    **Defendant Is Not Entitled to Early Release**

In the government's view, "[d]uring the current COVID-19 pandemic" an inmate who suffers from a condition "identified by the CDC as one that places a person at increased risk of

7

severe COVID-19 infection and who is not expected to recover from that condition, presents an extraordinary and compelling reason" justifying early release.  Gov't Opp'n at 27.  The government further "concedes that the defendant's obesity places her at an increased risk of severe illness if exposed to the COVID-19 virus."  *Id*.; *see also People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (listing "obesity" as a condition that puts "[p]eople of any age . . . at increased risk of severe illness from COVID-19") (last visited Sept. 14, 2020).  As the government correctly points out, however, "establish[ing] an extraordinary and compelling reason" for early release, Gov't Opp'n at 27, does not end the inquiry, "as both statute and policy statement instruct courts to 'consider[] the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable,'" *Morris*, 2020 WL 2735651 at *7 (quoting U.S.S.G. § 1B1.13) (alteration in original); *see also* 18 U.S.C. § 3582(c)(1)(A).

Those factors weigh against reducing defendant's sentence.  With respect to "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), defendant was "the prime moving force behind" a fraud that bilked the District of Columbia's Medicaid program out of over $80 million.  Sentencing Hr'g Tr. at 168:22–23.  Moreover, defendant's "history and characteristics" suggest the need for a serious penalty for this very serious crime.  18 U.S.C. § 3553(a)(1).  Prior to engaging in the four-year fraud for which she was convicted and is currently imprisoned, defendant had a history of engaging in fraudulent conduct.  When her nursing license was revoked, defendant stole the identity of a friend in order to work as registered nurse.  Presentence Investigation Report at 34, ECF No. 430.  The record is replete with other examples of defendant

overstating her qualifications or outright lying on official documents. *See* Gov't Opp'n at 28–29; Sentencing Hr'g Tr. at 170:2–10. Troublingly, that tendency has apparently not abated. The form defendant submitted to her warden requesting a reduction in sentence asked her to explain how she would "support [her]self" should she be released. Gov't Opp'n, Ex. C at 2. She answered that she is "a [r]egistered nurse by profession with lots of experience." *Id*. Defendant is not licensed as a nurse in any jurisdiction. Indeed, lying about that fact is what resulted in her exclusion from participation in any federal health care program and thus underlies her conviction in this case. *Bikundi*, 2016 WL 912169 at *4.[5]

Moreover, the need to fashion a sentence that "reflect[s] the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" counsels in favor of maintaining the sentence originally imposed. 18 U.S.C. § 3553(2)(A). As noted above, defendant was already given a significant departure from her guidelines-recommended sentence of 360 months to life imprisonment. Reducing an already heavily reduced sentence by over 30 percent would not adequately reflect the seriousness of defendant's crime. *Cf.* 18 U.S.C. § 3553(a)(4) (directing courts to weigh the sentencing guidelines in determining the appropriate sentence). The Court is mindful that defendant's financial crime has carried with it an enormous financial penalty. Nevertheless, while the financial penalty is designed to ensure defendant cannot enjoy the fruits of her crime, her sentence of imprisonment is designed to "promote respect for the law" and "provide just punishment." It thus must be served in full.

Defendant suggests that the current pandemic threatens to transform her 120-month sentence into a "death sentence." Def.'s Mot. at 17. The government, however, has detailed

---

[5] Defendant claims that her comment on the form was not meant to express "a desire to seek employment as a Registered Nurse" but merely to provide a "discussion of her life experience" and how she might leverage that experience to "support herself." Def.'s Reply Supp. Def.'s Mot. at 9, ECF No. 657. Defendant's casual relationship with the truth in the past, however, at least provides reason for pause.

9

BOP's attempts to forestall the spread of COVID-19 within defendant's facility. Gov't Opp'n at 15–19. Although outbreaks at some BOP facilities and state jails and prisons make it hard to "dispute[] that the novel strain of the coronavirus that causes COVID-19 is much more easily transmitted in the prison environment," *United States v. Johnson*, Crim. Case No. 15-125 (KBJ), 2020 WL 3041923, *9 (D.D.C. May 16, 2020), BOP records indicate that defendant's prison facility has reported only seven COVID-19 infections, all suffered by staff members, five of whom have since recovered. COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 14, 2020).[6] The Court does not take the threat of COVID-19 lightly, but BOP's success in keeping the prison population at defendant's facility free of the virus provides strong reason to believe it will continue making every effort to maintain the health of inmates at FCI Hazelton.

Despite the government's concession that defendant has medical conditions that meet the standard of an extraordinary and compelling reason for her eligibility for early release, the need for a sentence that adequately reflects defendant's lead role in a major criminal conspiracy counsels otherwise.[7]

---

[6] This, in part, sets defendant's case apart from that of her husband, who was one of her co-defendants and to whom this Court granted compassionate release on June 12, 2020. *United States v. Bikundi*, Crim. Action No. 14-cr-30-2 (BAH), 2020 WL 3129018, *1 (D.D.C. June 12, 2020). Defendant's husband was housed in a facility that "ha[d] seen one of the worst outbreaks of COVID-19 within BOP." *Id*. at *2. Moreover, while defendant's husband was certainly a major player in the fraud, as already noted, defendant was the leader of the conspiracy.

[7] Defendant asks, in the event her request for compassionate release is denied, "that the Court issue a non-binding recommendation to the BOP that she be placed in home confinement for the maximum period permissible." Def.'s Mot. at 21. 18 U.S.C. § 3624(c) authorizes BOP "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, 134 Stat. 281, allows BOP's director to "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" provided certain conditions are met. The authority to place defendant on home confinement, as she recognizes, belongs "solely" to BOP. Def.'s Mot. at 23. Although the government agrees with defendant that "a sentencing judge can make . . . *recommendations*" regarding a defendant's placement, Gov't Opp'n at 34 (emphasis added), the Court declines to do so. Determining which inmates face the greatest risk of and from a COVID-19 infection requires an understanding of the federal prison population as a whole, the feasibility of COVID-19 prevention methods at different BOP facilities, and other considerations outside the ken of a single sentencing court. BOP appears to be exercising its authority with some frequency, and "as of [the government's] filing" it had "transferred over 7,400 inmates to home confinement." Gov't Opp'n at 18. A non-binding recommendation based on

## IV. CONCLUSION AND ORDER

Defendant has not demonstrated that a reduction in her sentence comports with the factors laid out in 18 U.S.C. § 3553(a). Accordingly, it is hereby

**ORDERED** that defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED.**

**SO ORDERED.**

Date: September 14, 2020

_____
BERYL A. HOWELL
Chief Judge

---

incomplete information would do more to confuse than aid BOP's efforts to prioritize those in its care who are at the greatest risk.